Harvey Creek et al., Appellees, v. Charles Naylor et al. (Hall Freight Lines, Inc., Appellant.)

Gen. No. 9,538.

Opinion filed April 12, 1941.

GOWER, GRAY & GOWER, of Kankakee, and WALLACE J. BELL, of Watseka, for appellant.

LEN H. SMALL, of Kankakee, and PALLISSARD & SMITH, of Watseka, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

Hall Freight Lines, Inc., has appealed from a judgment of the circuit court of Iroquois county against Charles Naylor, Lewis Baker and appellant, in favor of Harvey Creek for $1,280, Walter Winter for $831, and Samuel Creek for $107, for personal injuries to Harvey Creek and Walter Winter and damages to the truck of Samuel Creek, resulting from the negligent operation of a tractor and trailer driven by Joseph Schadal.

The accident occurred on October 15, 1938, on State highway 49 about 13 miles north of Kankakee. The Creek truck was proceeding northward in its proper place on the highway. The tractor driven by Schadal was following and crashed into it from the rear. It was daylight and the negligence of Schadal is not questioned. The grounds urged for reversal are that Schadal was not in the employ of and the tractor and trailer were not controlled or operated by appellant, and that the trial court erred in denying its motion for a directed verdict; that proof of insurance was improperly admitted; and that the evidence as to damages is insufficient to justify the verdict.

Appellant is engaged in the trucking business with docks in Chicago and Danville. Naylor and Baker are partners engaged in similar business with headquarters in Chicago. They own and operate 3 trucks, hiring and paying drivers for the work. Schadal is one of

their drivers. Appellant occasionally engaged Naylor and Baker to haul loads of freight, at a flat price for each trip, less insurance covering public liability, property damage and cargo, deductible from the trip price. Naylor and Baker paid the driver and furnished gas and oil at their own expense. Schadal was paid by the trip. On the night before the accident Naylor and Baker furnished appellant a tractor and trailer with Schadal as driver, to haul a load of freight from Chicago to Danville. Schadal left appellant's dock in Chicago with the load during the night. He arrived at its Danville dock about 6:30 a. m. the next morning and delivered the cargo. Appellant maintains a truck for local deliveries from Danville, but it had left the dock before Schadal arrived. Watts, appellant's agent there, engaged Schadal to make two urgent deliveries for appellant, one at Hoopeston and the other at Cissna Park, which he could conveniently do on his return trip to Chicago, and to collect C.O.D. freight of $2.02 and $.89 on the respective deliveries, and turn it in to appellant's Chicago office. The freight bills did not carry the name of Naylor or Baker. Hoopeston was not on the route he traveled from Chicago to Danville, but he could go that way on his return trip. He made the deliveries for appellant, collected the freight and was on his way to pay it over to appellant's Chicago office and return the tractor and trailer to Naylor and Baker when the accident occurred. Some differences between his testimony and a written statement previously signed by him, prepared by an insurance adjuster, as to the time of his departure from Chicago and arrival at Danville, route directions by appellant, and as to his being on the road back to appellant's Chicago dock or to Naylor and Baker, do not discredit his testimony or tend to alter the determinative facts.

In *Densby v. Bartlett*, 318 Ill. 616, a garage owner furnished for hire, cars with drivers, to a real estate

broker for transportation of his customers. One of the customers, while being so transported, was injured and sued the broker on the theory that the driver was his agent. In denying recovery the court said: "There can be no question the driver of the car when appellee was injured was performing the service he was employed to perform by the general employer," and held that a driver performing a special service for the injured party was performing the work of his employer, the garage owner, within the scope of his employment, *viz.* driving cars for persons who hired them from his employer, and was not subject to the control of the hirer as to the manner of driving and could not be discharged by him. The court further held that the relation of master and servant does not exist unless the master's control of the servant includes the right to discharge. The same rule is announced in *Pioneer Fireproof Construction Co. v. Hansen,* 176 Ill. 100, and *Meyer v. Industrial Commission,* 347 Id. 172. Similar holdings under analogous circumstances are found in *Meredosia Levee & Drainage District v. Industrial Commission,* 285 Ill. 68; *Foster v. Wadsworth-Howland Co.,* 168 Id. 514; *Driscoll v. Towle,* 181 Mass. 416, 63 N. E. 922; and cases in other jurisdictions. Those cases are strongly relied upon by appellant. The distinguishing factor therein from the case at bar is that at the time of the accident the servant in each of them was performing the work the general employer had engaged to do. That is not true here. Schadal had completed the delivery for Naylor and Baker. He was still in their employ with the duty to return the truck to them. If this was all that happened, or if the accident had occurred on the trip from Chicago to Danville, then, under the cases cited, appellant would not be liable as master. But, following the delivery to it at Danville, appellant engaged Schadal in an independent and separate transaction, not connected with his employment by Naylor and Baker, to

make two deliveries, collect the freight and deliver the proceeds to its Chicago office. It cannot be questioned that Schadal thereby became the agent or servant of appellant for those purposes, or that this was a special employment wholly apart from his employment by Naylor and Baker. The fact that there was no agreement to pay Schadal for the service does not militate against the character of the relation. If services are rendered at the instance and request of another, a contract to pay the reasonable value thereof will be implied. (*Bradbury v. Helms,* 92 Ill. 35.) There is no claim that Schadal agreed to perform the service gratuitously.

Appellees call attention to the holding in the *Densby* case, *supra, Shannon v. Nightingale,* 321 Ill. 168, and *Onyschuk v. A. Vincent Sons Co.,* 277 Ill. App. 414, repeating the long established law announced in *Braxton v. Mendelson,* 233 N. Y. 122, 135 N. E. 198, that a servant in general service of one may be loaned, with respect to a particular work, to the service of another, so as to become for the time, in respect to the particular work, the servant of the other, with all the legal consequences of the relation. Schadal was not loaned by Naylor and Baker to appellant for the particular service. But the law did not prohibit him from undertaking the employment, and there is no showing that his contract with Naylor and Baker forbade it or that they would have forbidden it. Appellant has cited no authority, and we find none, holding that if an agent or servant is serving two masters or principals at the same time, one in a general service and the other in a particular service apart from the general service, that the principal or master in the particular service is not liable for his torts while engaged in the particular service. On the contrary, the fact that an employee is the general servant of one employer does not, as a matter of law, prevent him

from becoming the particular servant of another, who may become liable for his acts. (*Onyschuk v. A. Vincent Sons Co., supra;* 18 R. C. L., Master and Servant, sec. 244.) This, of course, refers to a particular service apart from the general service, as was the case here.

The general rule is that the party injured by the negligence of another must seek his remedy against the person who caused the injury, since such person is liable. To this general rule the cases of master and servant and principal and agent are exceptions, and the negligence of the servant or agent is imputable to the master or principal, but to bring the case within the exception it is necessary to show the relation of master and servant or principal and agent exists between the person at fault and the one sought to be charged for the result of the wrong, and the relation must exist at the time and in respect to the particular transaction out of which the injury arose. (*Mosby v. Kimball,* 345 Ill. 420; *Johanson v. William Johnston Printing Co.,* 263 Id. 236.) The facts in this case come within that rule.

It cannot be disputed that although appellant could not discharge Schadal from his employment with Naylor and Baker, it had the right to supervise, control or change the work it employed him to do and the right to discharge him from the particular employment at any time before he completed his duties thereunder. This satisfies the requirements of the rule laid down in the *Densby* case as to the right to discharge. The facts show that Schadal was in the employ of appellant in a particular service apart from his general employment by Naylor and Baker. The trial court did not err in refusing to direct a verdict for appellant.

When Schadal was asked by counsel for Naylor and Baker who wrote the statement he signed, he replied, "Some agent for an insurance Company." A general objection and motion to withdraw a juror was

overruled. The witness was cautioned by counsel to be careful how he answered. Naylor testified there was deductible from the rate schedule a certain percentage for public liability, property damage and cargo insurance. The only ground of objection made was that it was a prejudicial self-serving statement unless the witness could tell what was said and who said it. The objection was sustained and without further objection, the witness told what was said and by whom. Appellant's former Chicago manager testified, without objection, to the rate schedule for hauling, less insurance. An objection as to what the insurance deduction covered was overruled and he testified it covered public liability and property damage, with $100 deductible collision insurance. This was the same information testified to by Naylor to which no objection was interposed. This leaves the first objection mentioned the only one to be considered. None of the testimony as to insurance was introduced by appellees, and the above were the only objections made to it. The amounts of the verdict are not sufficient to raise a suspicion in our minds that the jury was influenced by this testimony and the case is not close on the facts. The judgment will not be reversed for such an inconsequential error.

Walter Winter was earning the equivalent of $3 per day. He was out of work 5½ months and expended $107.15 for hospital and medical services. This would aggregate a money loss of over $600 to him. The verdict of $831 is not excessive. Harvey Creek expended $20 for X-rays and $10 for chiropractic treatments. He testified he was in "awful pain" and stiff for 2 months, and was unable to eat or sleep much. Appellant's contention that there was no showing the expenses were necessary cannot be upheld. Appellee's father cried a little as he testified he knew the accident wrecked his son's life. The court instructed the jury to disregard any display of emotion, and in denying a

motion to withdraw a juror said it was apparent the witness simply lost control of himself and there was nothing intentional about it.

There is no reversible error in the record and the judgment is affirmed.

*Judgment affirmed.*