275 F.2d 352
 Walter ELLIS, individually, and Walter Ellis, as Administrator, etc., Plaintiffs-Appellees,
v.
DANNEN GRAIN AND MILLING COMPANY, Inc., a corporation, et al., Defendants.
Dannen Grain And Milling Company, Inc., a corporation, Defendant-Appellant.
 No. 12788.
 United States Court of Appeals Seventh Circuit.
 March 3, 1960.
 
 Alvin G. Hubbard, Reese Hubbard, Chicago, Ill., for defendant-appellant.
 Kevin D. Kelly, La Salle, Ill., Lester E. Williams, Chicago, Ill., for appellees.
 Before HASTINGS, Chief Judge, SCHNACKENBERG and CASTLE, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 Walter Ellis, plaintiff, individually and as administrator of the Estate of Leah Ellis, his deceased wife, instituted this action to recover for personal injury and property damage and for wrongful death arising out of an automobile collision. The Ellis automobile collided with an automobile owned and driven by Dorrance Powell. Defendants included Dannen Grain and Milling Company, Inc., and Powell. The corporation is hereinafter referred to as defendant.
 
 
 2
 The case was tried before a jury. The defendant's motion for a directed verdict at the close of the evidence was denied. A special interrogatory submitted to the jury as to whether Powell was the servant or employee of Dannen Grain and Milling Company at the time of the collision was answered in the affirmative. The jury returned a verdict against defendant and Powell for $25,000 for plaintiff's damages and $10,000 for the death of plaintiff's wife. The district court overruled defendant's motions to set aside the special finding of the jury, and for judgment notwithstanding the verdict or in the alternative for a new trial, and entered judgment on the verdict. Defendant appealed.
 
 
 3
 The single contested issue is whether there is any evidence to support a finding that Powell was a servant of the defendant at the time of the collision on December 22, 1956. The jury so found and the scope of our review of the trial court's refusal to disturb such finding is limited to a consideration of whether there was any evidence which together with all the reasonable inferences that might be drawn therefrom, supports the finding and the verdict based thereon.
 
 
 4
 At the time of the collision on December 22, 1956, Powell was enroute from Chicago, Illinois with a crankshaft and other parts to be used in the repair of a gasoline engine belonging to defendant. He was driving his own automobile. About a week prior he had entered the employ of one Eldon Shreeves as a truck driver hauling grain from defendant's grain storage depot at Wilbern, Illinois to a railroad loading point one-quarter of a mile away. Shreeves owned two trucks which he utilized for this purpose. Shreeves hired and paid the drivers. The defendant paid Shreeves one cent per bushel of grain hauled.
 
 
 5
 In addition to his grain hauling activities Shreeves also did maintenance and repair work on motor vehicles, engines and machinery of the defendant. He received $2.00 per hour for labor ($5.00 per hour for welding) and was reimbursed for parts he purchased to make the repairs. In some cases the defendant furnished the parts. Prior to 1954 he had operated a garage and repair shop, serving the public, near Knoxville, Illinois, some 60 or 70 miles west of Wilbern. In 1954 he closed his garage to enter the employ of the defendant in Oklahoma doing mechanical maintenance and repair work. In September, 1956 he returned to Illinois where he engaged in the maintenance and repair of defendant's equipment. In addition to its grain storage depot at Wilbern defendant operated four other depots in the central Illinois area.
 
 
 6
 About 4:30 a. m., on December 21, 1956 a stationary gasoline engine which furnished power to operate a generator at defendant's Wilbern grain storage depot broke down. Powell was present with Shreeves' truck in connection with the grain hauling activities. The generator supplied electricity to the motors which powered the augers which transferred the grain to the trucks for transportation to the railroad facilities. Shreeves was also present. With the breakdown the grain loading activities ceased. Powell and some of defendant's employees removed the head and pan from the engine for Shreeves to examine it. The crankshaft was broken. Repair of the engine entailed more expense than Shreeves was authorized to undertake without defendant's approval. He waited for Fred Van Winkle, defendant's superintendent in charge of the operation of the five central Illinois grain storage depots, who arrived at the site about 7:00 a. m. Van Winkle had his men hook up smaller gasoline motors to operate the augers and loading operations were resumed at about 11:00 a. m.
 
 
 7
 The testimony concerning at whose instance Powell made the trip to Chicago is not harmonious. We have carefully examined the record. It contains testimony to the effect that Van Winkle was anxious to have the stationary engine repaired as quickly as possible. Powell had his automobile at the depot; Shreeves had only his grain hauling trucks. There was testimony that Van Winkle requested Shreeves to have Powell take Shreeves to Morton, Illinois to obtain parts. Powell did drive Shreeves to the Capitol Tractor & Equipment Company at Morton, but the particular type of crankshaft was not in stock. The equipment company called its supplier in Chicago and made arrangements that the crankshaft and other parts could be picked up there. Powell and Shreeves returned to Wilbern where Shreeves reported to Van Winkle that the parts would be available at the loading docks of Wilco Co., on the outskirts of Chicago, that night. There was testimony that Shreeves suggested that Lovell, an employee of defendant, who had gone for parts on other occasions, go for these parts.
 
 
 8
 Van Winkle testified that when he asked Lovell to go Lovell told him he didn't have time. He testified that he wanted to get the part right away so badly that he thought it was necessary for somebody to make the trip to Chicago to get it; that he told Shreeves he (Van Winkle) couldn't go himself because he had the pick-up truck.
 
 
 9
 Shreeves testified that Van Winkle asked him if he thought Powell would go to get the parts and requested that Shreeves see if Powell would, and if so, have him go and get the parts.
 
 
 10
 Testimony as to whether defendant was to pay Powell mileage for the trip was inconclusive. Shreeves gave Powell $30.00 for expenses, but deducted it from the salary he had coming as a truck driver for Shreeves. There was testimony that Powell was not hired by Shreeves to assist him in his repair and maintenance work for defendant. Powell did assist Shreeves on some mechanical work on the truck Powell was driving and which belonged to Shreeves. There is nothing in the record which would indicate that prior to the incidents of December 21, and 22, that Powell had any connection with any of Shreeves' repair activities for defendant.
 
 
 11
 It is our opinion that there was evidence to support a conclusion by the jury that although Powell was an employee of Shreeves he was borrowed by the defendant for the purpose of making the trip to Chicago to obtain the repair parts urgently required; that he was the servant of the defendant at the time of the collision.
 
 
 12
 Much of the testimony and a good deal of the argument of counsel are devoted to factors bearing on Shreeves' relationship with defendant in so far as his maintenance and repair of its mechanical equipment was concerned. Whether, as to this activity, Shreeves was an employee of defendant or an independent contractor is not determinative of Powell's status. In either event Powell was an employee of Shreeves' in the latter's grain hauling enterprise, a separate and independent relationship Shreeves had with the defendant. That in the emergency created by the breakdown Powell assisted others present in removing the head and pan of the engine so Shreeves could examine it does not, as a matter of law, require a conclusion that he was employed by Shreeves to assist him in the performance of maintenance and repair work on defendant's equipment. Powell was present as a truck driver and his hauling activity had been interrupted by the stopping of the engine and cessation of loading. His assistance in determining the cause of the breakdown is not indicative of the capacity in which he later made the trip to Chicago for repair parts.
 
 
 13
 A servant who is employed by one person may with his consent be loaned to a third person to render a special service and thereby become the servant or employee of the third person in the performance of such special service. Creek v. Naylor, 309 Ill.App. 601, 33 N.E.2d 740; Watson v. Trinz, 274 Ill.App. 379; Meyer v. All-Electric Bakery and Anheuser-Busch, Inc., 271 Ill. App. 522; Schmalzl v. Derby Foods, Inc., 341 Ill.App. 390, 94 N.E.2d 86 and MacNeal, Inc. v. Timber Structures, Inc., 6 Ill.App.2d 323, 127 N.E.2d 504.
 
 
 14
 There was evidence from which the jury could conclude that Shreeves' employee, Powell, was loaned to and utilized by the defendant to make the trip to Chicago to obtain the parts necessary to repair its engine. That the testimony as to compensation for the trip was inconclusive is of no consequence.
 
 
 15
 The District Court did not err in ruling as it did on defendant's motions. The judgment is affirmed.
 
 
 16
 Affirmed.