GEORGE GAYDOS, PETITIONER-APPELLANT, v. PACK-ANACK WOODS DEVELOPMENT CO. (GENERAL CONTRACTOR) P. & B. EXCAVATING CO. (SUBCON-TRACTOR), AND MAYNOR EQUIPMENT CORP. (SUB-CONTRACTOR) RESPONDENTS-RESPONDENTS.

Passaic County Court
Law Division

Decided November 29, 1960.

*Messrs. Bassin and Bassin* for petitioner-appellant (*Mr. Philip Bolstein,* of counsel).

*Messrs. Hein, Smith & Mooney* for respondent-respondent P. & B. Excavating Co. (*Mr. James J. Hogger,* of counsel).

NADELL, J. C. C. This is an appeal from a determination of facts, award and rule for judgment entered in the New Jersey Department of Labor and Industry, Workmen's Compensation Division.

P. & B. Excavating Co. (hereinafter called P. & B.), a subcontractor of Packanack Woods Development Co. (hereinafter called Packanack Woods), general contractor, leased a truck and driver from Maynor Equipment Corp. (hereinafter called Maynor) at the rate of $4.50 an hour to do excavating work for P. & B. On November 14, 1957, George Gaydos, an employee of Maynor and driver of the truck leased by P. & B., had an accident arising out of and in the course of his employment. On the day of the accident Gaydos had reported with the truck to the site of the excavation being dug by P. & B. at Packanack Woods. There an employee of P. & B. instructed him to load the truck with dirt and told him where to dump it. He worked all morning loading and unloading the truck under the direction

of a P. & B. employee. There was no place to eat on the job, and petitioner therefore drove the truck about five blocks to a place where he had a bottle of milk, and on the way back to the job site, the truck jackknifed, struck a boulder, and Gaydos was injured (Record 7, 11, 12). The deputy director granted compensation to Gaydos against Maynor but dismissed the claim as to Packanack Woods and P. & B.

Maynor carried no workmen's compensation insurance and is not appealing from the award of compensation.

This appeal is by the petitioner, who appeals from the denial of compensation against P. & B. The ground of appeal is *N. J. S. A.* 34:15–79, providing that a contractor placing work with a subcontractor who fails to carry workmen's compensation insurance is himself liable for compensation due to an employee of the subcontractor.

The sole question argued on this appeal was whether a contractor (P. & B.) which rents a truck and driver from a subcontractor (Maynor) is liable under the statute to a driver of Maynor who is injured while operating a truck at the direction of the contractor (P. & B.).

■■ This court will review only those issues specifically raised and submitted by the parties: *Schmidt v. Revolvator Co.,* 46 *N. J. Super.* 232, 235 (*Cty. Ct.* 1957). The only question raised here is as to the interpretation of *N. J. S. A.* 34:15–79. This section provides:

"* * * Any contractor placing work with a subcontractor shall, in the event of the subcontractor's failing to carry workmen's compensation insurance as required by this article, become liable for any compensation which may be due an employee or the dependents of a deceased employee of a subcontractor * * *."

The purpose of this provision is to provide compensation for employees of subcontractors who are financially irresponsible and who have failed to obtain workmen's compensation insurance, by transferring the liability to the contractor. This seems fair for two reasons: (1) the con-

tractor has the opportunity to select subcontractors who have obtained proper insurance coverage and (2) the contractor receives the benefit of the work precisely as though he had it done directly by his own employees.

In *Jordan v. Lindeman & Co., Inc.*, 23 *N. J. Misc.* 194 (*C. P.* 1945) the court said, at *pp.* 196–197:

> "* * * (the purpose) is to protect an employee, whose direct employer violates the New Jersey policy by failing to take out compensation insurance, by permitting such employee to recover from the general contractor, who gets the direct benefit of, and is ultimately paid for, the work of such employee. This is no hardship on the general contractor, who gets the benefit of the work, and who could, and should, see that the work is sublet to responsible subcontractors who will comply with the policy of the state * * *."

See also *Corbett v. Starrett Bros., Inc.*, 105 *N. J. L.* 228 (*E. & A.* 1928); *Bertucci v. Metropolitan Construction Co.*, 21 *N. J. Super.* 318 (*App. Div.* 1952).

Larson says of legislation like *N. J. S. A.* 34:15–79:

> "The purpose of this legislation was to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers. The statute also aims to forestall evasion of the act by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping direct employment relations with the workers and relegating them for compensation protection to small contractors who fail to carry * * * compensation insurance."

1 *Larson, Workmen's Compensation* § 49.11 (1952). To the same effect are: 58 *Am. Jur. Workmen's Compensation* § 139 (1948) and 99 *C. J. S. Workmen's Compensation* § 110 (1958).

For *N. J. S. A.* 34:15–79 to become operative, three essentials must be supplied: (1) a contractor, (2) a subcontractor, and (3) failure by the subcontractor to carry workmen's compensation insurance.

■ Respondent P. & B. does not contend that it is not a contractor. A contractor is one who "contracts directly with the owner of a property for construction, or repair, or work to be performed." *Brygidyr v. Rieman,* 31 *N. J. Super.* 450, 453 (*App. Div.* 1954).

■ "A contractor is 'One who formally undertakes to do anything for another; specifically, one who contracts to perform work, or supply articles * * *'." *Jordan v. Lindeman & Co., Inc.,* 23 *N. J. Misc.* 194, 196 (*C. P.* 1945).

A contractor within the intendment of the statute also includes a subcontractor who, in turn, subcontracts. *Romano v. Milmoe,* 20 *N. J. Misc.* 35 (*N. J. Dept. of Labor, W. C. B.* 1941).

■■ Nor does the respondent P. & B. deny that Maynor failed to carry insurance. The only remaining question is whether Maynor can be classified as a subcontractor and therefore within the purview of *N. J. S. A.* 34:15–79.

A subcontractor within the intendment of the statute has been defined as "(o)ne who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance." *Mittan v. O'Rourke,* 115 *N. J. L.* 177, 179 (*Sup. Ct.* 1935); *Priby v. Lee,* 15 *N. J. Misc.* 292, 293 (*C. P.* 1936); *Gerber v. Sherman,* 120 *N. J. L.* 237, 240 (*Sup. Ct.* 1938), affirmed *Gerber v. Arron Const. Co.,* 121 *N. J. L.* 587 (*E. & A.* 1939).

"A subcontractor is one who enters into a contract with a person for the performance of work which such person has already contracted to perform. In other words, subcontracting is merely 'farming out' to others all or part of work contracted to be performed by the original contractor." *Brygidyr v. Rieman,* 31 *N. J. Super.* 450, 454 (*App. Div.* 1954).

In the instant case, respondent P. & B. was in the business of excavating. Under its contract with Packanack Woods, part of its work consisted of delivering dirt to certain locations. In order to accomplish this purpose, P. & B. leased a truck and driver, the petitioner, from Maynor. This situation is clearly within the provisions of *N. J. S. A.*

34:15–79. In point is *Jordan v. Lindeman & Co., Inc.*, 23 *N. J. Misc.* 194 (*C. P.* 1945). There a coal dealer, Lindeman & Co., Inc., had hired an independent contractor, Pentimone, and his trucks to deliver coal. Pentimone carried no workmen's compensation insurance. Pentimone hired one Jordan, who was subsequently injured while helping Pentimone deliver coal for Lindeman & Co. Compensation was allowed against Lindeman & Co.

*Parker v. Zanghi*, 45 *N. J. Super.* 167 (*App. Div.* 1957) was a case in which a wrecking company had contracted to buy, raze, and remove six houses. Not having the necessary equipment to haul an entire house, the wrecking company entered into an agreement with the owner of some low-boy tractor trailers whereby the latter was to transport the houses. An employee of the owner of the trailers was injured in transporting the houses. Although the court was applying Pennsylvania law, the issue as to whether the owner of the trailers was a subcontractor was decided on the basis of general reasoning applicable to the instant case. The court, on this point, stated, 45 *N. J. Super.*, at *pp.* 170–171:

> "Defendants had contracted to remove from the site the six houses and the material composing them, and we think it can fairly be said that they 'sublet' to McCormick (owner of trailers) 'part of the work which' they had 'undertaken.' McCormick, by agreeing to haul off the roofs and first stories of five houses, took over a substantial part of the removal operation."

Respondent attempts to distinguish these cases by contending that they involved an agreement to perform part of the work of the contractor, whereas here there was only an agreement to lease a truck and driver. He argues in his brief: "This was not an agreement between Maynor and P. & B. whereby Maynor was to do all or any part of the work that P. & B. had contracted to do. The only obligation on the part of Maynor was to furnish a truck and driver for use by P. & B." It is unrealistic to assume that had Gaydos shown up with the truck, and then merely passed the time of day, smoking or indulging in like activities, that

the contract between P. & B. and Maynor would have been considered complied with. The truck and driver were leased by P. & B. to do part of the work that its employees would otherwise have been compelled to do. This type of activity, transportation of dirt from one locality to another, was routine for a company such as P. & B. This being so, *N. J. S. A.* 34:15–79 applies.

As Larson says:

"\* \* \* (T)he statute [one like *N. J. S. A.* 34:15–79] covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees \* \* \*. Delivery and transportation cases turn largely on common sense considerations of whether the delivery activity was routine or extraordinary for this type of business."

1 *Larson, Workmen's Compensation* § 49.12 (1952).

It would appear that the mere fact that technically the arrangement could be denominated as lessor-lessee should not be allowed to frustrate the basic policy of the act. Once it is determined that a contractor is "farming out" work, it should follow that those to whom he farms it out should fall within the terms of the statute, regardless of the terms used.

This approach was followed in *Brothers v. Dierks Lumber & Coal Co.,* 217 *Ark.* 632, 232 *S. W. 2d* 646 (*Ark. Sup. Ct.* 1950). The Arkansas court stated, 232 *S. W. 2d,* at *p.* 650, that:

"Once it is determined that Dierks was a 'contractor' under its Forest Service contract, it follows automatically that Dan Durham was a 'subcontractor', since he was performing under contract with Dierks a part of the work-removal of merchantable timber—called for by the Dierks Forest Service contract \* \* \*. What Durham was doing was an essential part of the interdependent whole called for by the Dierks Forest Service contract. And Durham was uninsured."

In *Morey v. City of Battle Creek,* 229 *Mich.* 650, 202 *N. W.* 925, 38 *A. L. R.* 1039 (*Sup. Ct.* 1925), a teamster, who was

an employee of the owner of teams of horses who was under contract to provide the city with teams and drivers at certain hourly rates, was injured. Although the employee was denied compensation, the court in arriving at that conclusion construed a statute like *N. J. S. A.* 34:15–79 as applying to the situation. At *p.* 925 of 202 *N. W.* the court said:

"Under this provision it becomes necessary to determine whether the city would have been liable if Keagle (the employee) had been directly employed by it."

 *Wisinger v. White Oil Corporation,* 24 *F.* 2d 101 (5 *Cir.* 1928), involved an injury to employees of sublessees of the lessee of oil leases. In applying a Louisiana statute similar to ours the Circuit Court of Appeals said, at *p.* 102:

"There is no doubt they (sublessees) were doing for defendant the work it was obligated to do, and it is therefore immaterial whether they be classed as sublessees or independent contractors."

If a contractor leases or contracts out part of the work which his employees would ordinarily be compelled to do, he falls within the scope of *N. J. S. A.* 34:15–79 if his "lessor" or subcontractor fails to carry workmen's compensation insurance.

In support of its position respondent cites *Runk v. Rickenbacher Transportation Co.,* 31 *N. J. Super.* 350 (*App. Div.* 1954). The case is not in point. The issue discussed there was whether the injured employee was an employee of the lessor or lessee. See *p.* 354 of 31 *N. J. Super.*:

"The appellant argues that the decedent was a general employee of Strauser, * * *. The determination of each case depends on the particular facts. Some of the elements to be considered are the hiring, control, payment of wages and power of dismissal."

Of this case respondent states in his brief: "The importance of the Runk case is to indicate that this arrange-

ment was termed a lessor-lessee agreement with respect to the tractor and not a contractor-subcontractor relationship * * *." In light of the fact that the problem confronting us in the case *sub judice* was not there presented, the fact that the court termed the arrangement "lessor-lessee" is not persuasive.

The respondent says of *Lacombe v. Cudahy Packing Co.*, 103 *N. J. L.* 651 (*E. & A.* 1927):

> "In that case the defendants hired a truck and driver from a trucking company for the purpose of making deliveries. The court held that there was no employee-employer relationship and nowhere in the case is it indicated that a contractor-subcontractor relationship existed."

The *Lacombe* case is not in point because it involved tort liability, and did not involve an interpretation of the statute in question.

If a "lessor-lessee" arrangement such as that here presented were held to be outside the reach of *N. J. S. A.* 34:15–79, in order to nullify the statute, a contractor such as respondent would merely have to "lease" equipment and men to insulate itself from liability. It would be the employees who would thereby suffer.

The decision of the deputy director denying compensation to the petitioner against P. & B. under *N. J. S. A.* 34:15–79 is reversed. The petitioner is entitled to the same award against P. & B. as the deputy director awarded against Maynor. No question was raised on appeal by P. & B. as to the correctness of the amount of the award by the deputy director, which is 8% of total permanent disability, or 44 weeks at the compensable rate (Record, 147). The other allowances in the deputy director's judgment are affirmed. A judgment may be presented in accordance with these conclusions.