Doran JOHNSON, d/b/a Doran Johnson Builder, Plaintiff in Error,

v.

O–KAY TURKEYS, INC., a corporation, Defendant in Error.

No. 40461.

Supreme Court of Oklahoma.

May 6, 1964.

Rehearing Denied June 9, 1964.

Wheeler & Wheeler, Tulsa, for plaintiff in error.

Meacham, Meacham & Meacham, Clinton, for defendant in error.

DAVISON, Justice.

The parties occupy the same relative positions in this court as they did in the lower court and will be referred to by name or as plaintiff and defendant.

The plaintiff, Doran Johnson, d/b/a Doran Johnson Builder, instituted this action in the lower court against the defendant, O-Kay Turkeys, Inc., to recover a balance of $22,669.55, alleged to be due plaintiff for the construction of a turkey processing plant pursuant to a written contract with the defendant, and to foreclose a lien that plaintiff had filed against the premises, and for a reasonable attorney's fee. Defendant's answer denied the correctness of the amount claimed by plaintiff to be due and alleged that it had previously tendered to plaintiff the sum of $12,331.59 in full payment of all sums due plaintiff. Defendant also cross-petitioned for $1600, because of alleged improper and incomplete construction on the part of plaintiff, and for a reasonable attorney's fee.

The case came on for trial to a jury. At the completion of plaintiff's evidence the trial judge sustained defendant's demurrer to the evidence and rendered judgment for plaintiff for $12,331.59 (that being the amount tendered by defendant) and made no allowance of any attorney's fee to either party. The journal entry makes no disposition of defendant's cross-petition, but the court minute states the defendant dismissed the same with prejudice.

Plaintiff contends the trial court erred in sustaining the demurrer. Plaintiff argues that under the clear terms of the contract he was entitled to the additional compensation, and that if the contract was not clear and unambiguous, then it was a matter to be submitted to the jury.

The record reflects that on April 27, 1961, plaintiff contracted to construct a building for defendant for $167,000 in accordance

with plans and specifications. The plans and specifications were not introduced in evidence, but it is obvious from the record that the contract was for the building itself and did not include furnishing and installation of the materials and equipment included in the items of refrigeration, electrical, plumbing, and insulation. This contract designates plaintiff as "contractor" and has the following provision:

"Contractor will coordinate the work of sub-contractors assigned to him by the Owner and shall receive as compensation therefor five per cent of the amount of each such sub-contract, which compensation shall be in addition to the $167,000 hereinabove set forth."

The defendant also contracted with four other separate concerns for the materials, equipment, and installation, embraced in the mentioned items in the following amounts: Refrigeration—$139,136.00; Electrical—$26,341.72; Plumbing—$8306.41; and Insulation—$32,975.00; or a total of $206,759.13. Plaintiff contends that under the above quoted portion of the contract he was entitled to 5% thereof ($10,337.95) as additional compensation.

■ The above concerns or companies had their contracts with the defendant owner of the property and were not "sub-contractors" as that term is applied to persons who contract for the performance of an act with a person who has already contracted for its performance. However the plaintiff testified that normally by trade usage they would be classified as "sub-contractors." We will regard them as such, since we are considering the sufficiency of the evidence to withstand a demurrer.

■■ This leaves for consideration the meaning or interpretation to be placed upon the remaining portion of the above quoted paragraph. In Greeson v. Greeson, 208 Okl. 457, 257 P.2d 276, 279, we quoted with approval as follows:

" 'A contract is to be interpreted to give effect to the mutual intention of the parties at the time of contracting, and, in so doing, the language used governs if it is clear and does not involve an absurdity. The meaning of a contract is to be ascertained from the writing alone, if possible; the duty of the court being to declare the meaning of what is written in the instrument, not what was intended to be written.' "

■ And in Empire Oil & Refining Co. v. Babson, 182 Okl. 336, 77 P.2d 682, this court held that to determine the meaning of a written contract the court must look to the whole instrument, having resort to the natural signification of the words used, in the order of grammatical arrangement in which the framers of the instrument have placed them.

■■ The only logical meaning of the word "assigned", as used in the contract relative to "sub-contractors" assigned to plaintiff, is that such concerns be selected or designated and then consigned or transferred by defendant to plaintiff for some degree of appropriate direction. Black's Law Dictionary, DeLuxe Edition; Webster's New International Dictionary, Second Edition; 6 C.J.S. p. 1038. In his testimony the plaintiff freely admits that the defendant never actually assigned such contractors to him and that the contract was the only "understanding" between plaintiff and defendant. The following testimony of plaintiff best explains the nature of the construction operation:

"A  Again it was a day to day operation, where we would get something ready so they could proceed and we would proceed after they had completed their work.

"Q  And the same situation pertains to all of these sub-contracts as you have testified to with regard to Risto-Brugger, it was all between you and the sub-contractor?

"Yes, all based on the understanding that was part of the job."

It is our conclusion that the conduct of the plaintiff, and for that matter of the

other contractors on the job, was a course of co-operation or co-ordination of their operations under their respective contracts that is ordinarily expected and required where several contractors work on a construction project. Our conclusion is supported by the fact that defendant had its own engineer on the job. This man was a specialist in the field of turkey processing plants and he did some scheduling of the work sequence and plaintiff consulted with him.

Under the express terms of the contract and our interpretation of the words used by the parties it was required that the defendant assign the other contractors to the plaintiff. Plaintiff's evidence reflects that this was not done. The evidence was not sufficient to support the claim for additional compensation under the provisions of the contract. The court did not err in sustaining the demurrer to plaintiff's evidence.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.