ROBERT RICHARD, Plaintiff-Appellee and Cross-Appellant, *v.* ILLINOIS BELL TELEPHONE COMPANY *et al.*, Defendants-Appellants—(RICHARD A. PENA *et al.*, Defendants-Cross-Appellees).—(ILLINOIS BELL TELEPHONE COMPANY, Third-Party Plaintiff-Appellant, *v.* ROBERT R. ANDERSON CO., Third-Party Defendant-Appellee.)—JOHN M. COAN, INC., Plaintiff-Appellant, *v.* ROBERT R. ANDERSON CO., Defendant-Appellee.

First District (5th Division)   Nos. 76-777, 77-931 cons.

Opinion filed November 3, 1978.—Rehearing denied December 26, 1978.

L. Bow Pritchett, Nathaniel Friends and Edward Butts, all of Chicago, for appellant Illinois Bell Telephone Company.

French & Rogers, of Chicago (Richard G. French and Timothy G. Keating, of counsel), for appellant John M. Coan, Inc.

Lord, Bissell & Brook, of Chicago (Cornelius P. Callahan, James L. Pittman, and Hugh C. Griffin, of counsel), for appellee Robert R. Anderson Co.

Kirkland & Ellis, of Chicago (Donald J. Duffy, of counsel), for appellee L. W. Schiefelbein Cartage, Inc.

Van Duzer, Gershon, Jordan & Petersen, of Chicago (Horace W. Jordan and Edward W. Moltzen, of counsel), for appellee Richard A. Pena.

Ronald S. Fishman, of Chicago, for appellee Robert Richard.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Two appeals are involved in this consolidated matter. In 76-777, Illinois Bell Telephone Company (Bell) and John M. Coan, Inc. (Coan) appeal from a verdict and judgment thereon against them in an action by plaintiff for personal injury. Plaintiff cross-appeals from the judgment on the verdict in favor of defendants Richard A. Pena (Pena) and L. W. Schiefelbein Cartage, Inc. (Schiefelbein), and Bell also appeals from a directed verdict in its third-party action for indemnity against Robert R. Anderson Co. (Anderson). In 77-931, Coan appeals from the granting of a motion to dismiss its separate action for indemnity against Anderson.

In 76-777, both Bell and Coan raised questions as to the applicability of "An Act to protect workmen and the general public * * * during construction or repair of bridges and highways * * *" (Ill. Rev. Stat. 1977, ch. 121, par. 314.1 et seq.) (hereinafter referred to as the Roads and Bridges Act). Bell separately contends that the alleged negligent acts of its employee, Raymond Boldt, were not within the scope of his employment. Coan also asserts that the jury was improperly instructed that its employee, William Lord (Lord), was its agent at the time of the occurrence and also that the court erred in failing to give separate verdict forms on each count of the complaint as to each defendant. In its separate appeal, Bell also contends that a verdict was erroneously directed against it on its third-party action for indemnity against Anderson because its negligence, if any, was passive whereas that of Anderson was active or primary. In a cross-appeal, plaintiff contends that if a new trial is granted as to either Bell or Coan a new trial should also be granted plaintiff as to Pena and Schiefelbein.

In 77-931, the issues are presented as follows: (1) if plaintiff's judgment against Coan is reversed in appeal 76-777, should there also be a reversal of the dismissal of its indemnity action against Anderson; and (2) if plaintiff's judgment against Coan is affirmed, were facts determined which were "fatal to recovery" in Coan's action against Anderson.

Anderson was the general contractor of a road construction project and, because it did not own enough dump trucks to handle all of the asphalt required, it hired Coan to provide additional trucks. Coan, in turn, hired trucks from other companies, including Schiefelbein and Sinclair Cartage Company (Sinclair), to fulfill its commitment to Anderson. After being loaded with asphalt at another location, the trucks were driven by employees of the respective owners to the construction site, where they remained in line until signaled by an Anderson employee to dump their contents in front of a CMI machine which flattened and graded the asphalt. After the trucks were unloaded, each driver was supposed to lower his truck bed and proceed on an unpaved portion of the road under construction to the main highway. However, on the day of the occurrence in question, a Schiefelbein driver after dumping his load drove away with the truck bed still in a raised condition, and it struck a permanent telephone cable which extended from poles on the east and west sides of the road under construction. The impact disengaged the cable from the east pole and, although still attached on the west side, it fell across the moving lanes of the main highway traffic.

Ruben Thorp (Thorp), an Anderson construction foreman, telephoned to Bell and reported the downed cable. Raymond Boldt, a Bell employee, was dispatched and arrived at the scene about 10:30 a.m. He had a conversation with Thorp concerning which the testimony is conflicting, but it does appear that Thorp initially wanted to cut the cable to clear it from the road and that Boldt would not authorize this to be done, stating that if the cable was cut Anderson must bear the responsibility for the damage resulting.

Someone then decided to position dump trucks on either side of the road with their dump beds raised so that the cable could be draped over the trucks to allow traffic to pass under it. Thorp testified that an employee of Bell made the decision to raise the cable but on cross-examination stated that he did not know whether that person was an employee of Bell or Commonwealth Edison Company. It was the testimony of Boldt that he was the only Bell employee then present and that he took no part in the decision to drape the cable over the trucks, having left the area to telephone his company as to the nature of the problem presented. In any event, Coan's driver (Lord) took no part in the decision, and the draping was accomplished by a Sinclair driver and Lord placing their trucks, one on each side of the road with their beds raised, and the cable was stretched over the beds. Both drivers testified that they placed their trucks in this position at the request of Thorp and that traffic then passed under the cable. Later, a truck driven by Pena came in contact with the raised cable causing it to dislodge and strike plaintiff, an employee of Anderson, who was severely injured.

Another Bell employee, Alfred Seager, appeared on the scene before the accident involving plaintiff in response to a telephone call made by Boldt. Seager testified that he was the Bell "officer of the day" and, as such, was responsible for repairs and installations; that Boldt's telephone call informed him that a cable was down and lying across the road; that he did not send a construction crew at that time but, instead, went to the scene himself to determine the extent of the trouble; that when he arrived, he observed the cable strung over the beds of two trucks—one on each side of the road; that he made a close visual inspection of the cable; that the accident involving the plaintiff occurred 15 or 20 minutes after his arrival; that it was not until after the plaintiff's accident that he called for a repair crew, which arrived at about 2:30 p.m.; and that using a snorkel truck with a boomer basket, the crew lifted the cable and made a temporary connection to the poles.

In one count of plaintiff's complaint, Bell, Coan, Pena and Schiefelbein were charged with being negligent, and in another count it was alleged that all except Pena violated the Road and Bridges Act. Both counts were submitted to the jury, but the court refused to give the jury separate verdict forms requested by Coan as to each count and as to each defendant. The jury found in favor of plaintiff against Bell and Coan but against plaintiff and in favor of Schiefelbein and Pena. The jury also answered affirmatively to a special interrogatory submitted by Coan as to whether Coan's conduct constituted negligence which proximately caused the injury and damage complained of. No issue is raised as to the amount of damages awarded ($350,000).

OPINION

## COAN'S CONTENTIONS IN 76-777
### I.

Coan first contends the trial court erred in submitting plaintiff's Instruction No. 9 because it told the jury that Coan was liable for any acts of Lord, the driver of its truck. It argues that this instruction removed from the jury the question of whether Lord was acting outside the scope of his employment with Coan and the question of whether Lord was loaned to Anderson on the day of the accident. Instruction No. 9 stated:
"The [defendant] John M. Coan, Inc.'s truck drivers were agents of [Coan] at and before the time of this occurrence. Therefore any act or omission of the agent at this time was in law the act or omission of the [defendant] John M. Coan, Inc."
■■ Initially, we note that at the jury instruction conference, the only objection made by Coan was that the instruction took the loaned servant question from the jury. Coan specifically stated it was making no

objection on the basis that Lord was not acting within the scope of his employment. It is clear that the grounds for an objection to a jury instruction must be specifically stated at trial (Supreme Court Rule 239(b), Ill. Rev. Stat. 1977, ch. 110A, par. 239(b)); otherwise, that objection cannot be raised on appeal. (*Johnston v. Basic* (1973), 16 Ill. App. 3d 453, 306 N.E.2d 610; *Baker v. Norfolk & Western Ry. Co.* (1970), 120 Ill. App. 2d 296, 256 N.E.2d 887; *Henry v. Robert Kettell Construction Corp.* (1967), 82 Ill. App. 2d 420, 226 N.E.2d 89.) If a party makes an objection for one reason at trial, he cannot raise different reasons for his objection on appeal. (*Northern Trust Co. v. Winston* (1975), 32 Ill. App. 3d 199, 336 N.E.2d 543.) Coan based its objection to Instruction No. 9 solely on the ground that Lord was the loaned servant of Anderson. The trial court was informed by Coan that the latter was making no scope of employment objection. Accordingly, we shall not consider this objection to plaintiff's Instruction No. 9.

■■ With regard to the loaned servant question, it is clear that an employee in the general employment of one master may, with his consent, be loaned to another and become the employee of the master to whom he is loaned. In such a case, the second employer, not the first, would be liable for the employee's negligence. (*Ellis v. Dannen Grain & Milling Co.* (7th Cir. 1960), 275 F.2d 352; *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665; 53 Am. Jr. 2d *Master and Servant* §415 (1970).) Whether an employee sent by his general employer to another for the performance of special work becomes a loaned servant is usually a question of fact. (*Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60; *Merlo v. Public Service Co.*) However, it is clear that an employee in the special service of a second employer cannot be considered a loaned servant unless he is wholly free from the control of the first employer and wholly subject to the control of the second employer. (*Merlo v. Public Service Co.; Yankey v. Oscar Bohlin & Son, Inc.* (1962), 37 Ill. App. 2d 457, 186 N.E.2d 57; *Murphy v. Lindahl* (1960), 24 Ill. App. 2d 461, 165 N.E.2d 340.) Further, it has been held that a person cannot become an employee of the second employer unless the second employer has the power to discharge or fire the employee. (*Connolly v. People's Gas Light & Coke Co.* (1913), 260 Ill. 162, 102 N.E. 1057; *Pioneer Fireproof Construction Co. v. Hansen* (1898), 176 Ill. 100, 52 N.E. 17; *Robinson v. McDougal-Hartmann Co.* (1971), 133 Ill. App. 2d 739, 272 N.E.2d 513; *Emma v. Norris* (1970), 130 Ill. App. 2d 653, 264 N.E.2d 573.) And the fact that the employee obeys directions or signals given by the second employer in performing his special service does not make the employee a loaned servant. *Standard Oil Co. v. Anderson* (1909), 212 U.S. 215, 53 L. Ed. 480, 29 S. Ct. 252; *Gundich v. Emerson-Comstock Co.; Yankey v. Oscar Bohlin & Son, Inc.*

The facts in *Gundich v. Emerson-Comstock Co.* were similar to those in the instant case. There, a general contractor had hired Emerson-Comstock Co. to provide a crane and crane operator who was hired and paid by Emerson. On the construction site, the operator followed hand signals given by an employee of the general contractor. The plaintiff was injured by the crane and brought suit against Emerson. Emerson contended that the crane operator was loaned to the general contractor at the time of the accident and that therefore the general contractor, not Emerson, was liable for the crane operator's negligence. The court held that the operator was not a loaned servant and explained that neither the fact that the operator obeyed signals given by employees of the general contractor nor the fact that the general contractor reimbursed Emerson for the operator's wages was sufficient to qualify the operator as a loaned servant. 21 Ill. 2d 117, 127, 171 N.E.2d 60, 65.

Similarly, in *Robinson v. McDougal-Hartmann Co.*, a general contractor rented at an hourly rate from McDougal-Hartmann Co. a motor grader to be operated by a McDougal employee who moved the machine in accordance with hand signals given by an employee of the general contractor. During the operation of the machine, the plaintiff was run over. The court held that the operator was not a loaned servant and that he remained an employee of McDougal, explaining:

" '[A] continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the loaned servant has the skill of a specialist.

A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value.' " 133 Ill. App. 2d 739, 742-43, 272 N.E.2d 513, 516, quoting Restatement (Second) of Agency §227, comment *c*.

█▌ In the instant case, we believe the evidence shows that Lord could not have been a loaned servant under the reasoning of the cases cited above. It appears from the record that Coan owns approximately 35 trucks and employs about the same number of drivers. The drivers are paid by Coan and it alone has the authority to hire or discharge them. Coan drivers report to its office and receive their work assignments for each day. On the day of the accident, Lord was assigned to haul asphalt for Anderson who paid a fixed rate per hour for Coan's truck and driver. While Anderson had the power to tell Coan employees where to unload and when to leave the construction site, it did not have the right to hire or discharge any of them, as that authority remained in Coan. The fact that Lord obeyed Anderson employees' signals as to when and where the

asphalt should be dumped and when to leave for another load, did not create a loaned servant situation. As stated in *Gundich v. Emerson-Comstock Co.*:

" '[W]hen one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be co-operation and co-ordination, or there will be chaos. The giving of * * * signals * * * [is] not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, *and is not enough to show that there has been a change of masters.*' " (21 Ill. 2d 117, 125, 171 N.E.2d 60, 64.)

See also *Foster v. Englewood Hospital Association* (1974), 19 Ill. App. 3d 1055, 1060, 313 N.E.2d 255, 259, where it was stated:

"The relationship of employer-employee is not an ephemeral one to be imposed or removed lightly. There are certain rights which accrue to the employee and liabilities which attach to the employer. For these reasons the law requires that before a person may be considered a borrowed servant his services must be loaned with his acquiescence or consent [citation]; and he must become wholly subject to the control and direction of the second employer, and free during the temporary period from the control of the original employer. [Citation.] In order to create the relation, therefore, the original employer must resign full control of the employee for the time being, it not being sufficient that the employee is partially under the control of a third person. (I.L.P. Employment §2, page 368.)"

Thus, we believe that under the facts of this case, Lord could not have been a loaned servant of Anderson so as to absolve Coan of liability.

It might perhaps have been argued that, while Lord was not a loaned servant with respect to the general activities on the construction site that day, he was a loaned servant as to the particular act of placing his truck with its bed raised to support the cable. We feel, however, that such an argument would have no merit. We note that even during this particular episode, Anderson was exercising no more control over Lord than it had while he was hauling asphalt. Lord voluntarily complied with a request as to the placing of his truck and the raising of its bed. We see no significant difference between that compliance and his obedience to signals which, as discussed above, does not cause one to become a loaned servant.

Additionally, we think that the fact Coan neither consented to nor had knowledge of Lord's participation in suspending the cable is significant. In cases where an employee is held to be "loaned" (see, *e.g.,* *Ellis v. Dannen Grain and Milling Co.*) or in cases in which a loaned servant question is presented (see, *e.g., Gundich v. Emerson-Comstock*

*Co.; Merlo v. Public Service Co.; Foster v. Englewood Hospital Association; Robinson v. McDougal-Hartmann Co.; Yankey v. Oscar Bohlin & Son, Inc.; Murphy v. Lindahl),* the first employer has always had knowledge of the tasks which his employee was to perform for the second employer. Indeed, it is only logical that an employee can become a loaned servant only when the first employer knows that he is loaning his employee and knows the purpose for which the employee is loaned.

In the instant case, we do not see how Coan could have loaned its employee Lord for the purpose of raising a telephone cable when it was unaware of the incident. Accordingly, we find that Lord was not loaned with respect to this particular incident.

■■ As any question concerning whether Lord was acting within the scope of his employment was waived and because he was not a loaned servant at the construction site on the day in question and could not be considered to have been loaned at the time of the suspension of the cable, we hold that the trial judge properly submitted plaintiff's Instruction No. 9 to the jury.

## II.

Coan also contends that the giving of Instructions 1 through 8 was reversible error, for two reasons: (1) "They were Structural Work Act [(Ill. Rev. Stat. 1977, ch. 48, par. 60 *et seq.*)] instructions incorrectly reworded for the Roads and Bridges Act" and (2) "There was no evidence that John M. Coan, Inc. was in charge of the work."

■■ We reject the first of those reasons, because Coan has not specified the manner in which any of the eight instructions were "incorrectly reworded." It does, however, separately argue that No. 8 was "incomplete and inaccurate." This instruction was a modification of Illinois Pattern Jury Instructions, Civil, No. 180.18 (2d ed. 1971) (hereinafter cited as IPI). The instruction is intended for cases brought under the Structural Work Act and reads as follows:

"180.18 Intervention of Outside Agency

If you decide that the plaintiff has proved all the propositions of his case, it is not a defense that something other than a violation of the Structural Work Act by the defendant may also have been a cause of the injury. [However, if the sole proximate cause of injury to the plaintiff was something other than a violation of the Structural Work Act by the defendant, then your verdict should be for the defendant.]"

The bracketed last sentence of IPI No. 180.18 was not included in No. 8 given in the instant case and, as a result, Coan argues that "a theory of defense [sole proximate cause] was taken from the jury." We do not feel, however, that this omission constituted reversible error as in other

instructions the jury was informed as to the concept of proximate and intervening causes. (See *Herington v. Illinois Power Co.* (1967), 79 Ill. App. 2d 431, 223 N.E.2d 729; 35 Ill. L. & Prac. *Trial* §258 (1958).) Furthermore, Coan does not contend that it offered and was denied a separate instruction on the question of sole proximate cause.

■■ Coan's other reason that the giving of Instructions 1 through 8 was reversible error is entirely contained in the following statement:

"[T]here was absolutely no evidence that Coan was in charge of the overall work, Anderson having acknowledged that responsibility, or of the phase causing injury as all witnesses testifying on the subject attributed the decision and operation of raising the cable to Anderson or Illinois Bell or both."

We also reject this reason, as there is no requirement under the Structural Work Act that to be liable a defendant must be in charge of the "overall work." A person in charge of a phase of the work may also be liable. (See *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 291, 226 N.E.2d 630, 639.) Because Coan was involved in the plan to suspend the cable to the extent that it placed its truck in position to support the cable which was eventually again knocked down, we believe that a question of fact arose as to whether Coan was in charge of a phase of the work resulting in injury to plaintiff. See *Miller v. DeWitt; Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.

Moreover, although the question has not been raised, there is doubt as to whether in an action seeking damages under the Roads and Bridges Act a plaintiff is required to show that defendants be in charge of the work. Section 5 of that act (Ill. Rev. Stat. 1977, ch. 121, par. 314.5) governs criminal liability for violations and does require that defendants be in charge of the work. This requirement, however, does not appear in section 6 of the Act (Ill. Rev. Stat. 1977, ch. 121, par. 314.6), which controls civil liability. Section 5 provides as follows:

"Any contractor, subcontractor, or his authorized agent *in charge* of construction work on highways or bridges within the State of Illinois, or any driver of any motor vehicle, who knowingly or wilfully violates any provision of this Act, is guilty of a petty offense." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 121, par. 314.5.

Section 6 does not contain the words "in charge." It provides in pertinent part that "[a]ny contractor, subcontractor, or his authorized agent or driver of any motor vehicle who knowingly or wilfully violates any provision of this Act, shall be responsible * * *" for resulting injury, damage or death sustained as a result. (Ill. Rev. Stat. 1977, ch. 121, par. 314.6.) We recognize that in *Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 157-58, 265 N.E.2d 134, 137, the supreme court read the

"having charge of" requirement as applying to both the criminal and civil liability provisions of the Structural Work Act. However, we do not feel that *Huckabee* should lead us to hold similarly with respect to the Roads and Bridges Act. Significant to the court in *Huckabee* was the fact that in the Structural Work Act both the civil and criminal provisions appear in section 9, which also contains the "having charge of" requirement (Ill. Rev. Stat. 1977, ch. 48, par. 69); but, as stated above, the civil liability section of the Roads and Bridges Act does not contain the "in charge" provision appearing in the separate criminal liability section.

■■ The Structural Work Act was enacted in 1907, and from that time to the present its section 9 has remained unchanged. Since the enactment of the Roads and Bridges Act in 1959 the "in charge" provision has always been in section 5 but never in section 6. We can only assume that because the legislature did not include the "in charge" language in the civil liability section of the Roads and Bridges Act, that it intended the requirement to apply only to criminal liability. In view thereof, *Huckabee* does not persuade us to intermix those sections to include "in charge" as a civil liability requirement.

### III.

Next, Coan contends that the trial court erred in refusing to honor its request that separate verdict forms be used. As a result, Coan asserts, it is impossible to determine whether the jury's finding of liability was based upon the Roads and Bridges Act or common law negligence.

■■ The law regarding separate verdicts is clearly set forth in section 68(3) of the Civil Practice Act:

> "(3) If there are several counts in a complaint, counterclaim or third-party complaint based on different demands upon which separate recoveries might be had, the court shall, on the motion of any party, direct the jury to find a separate verdict upon each demand." (Ill. Rev. Stat. 1977, ch. 110, par. 68(3).)

The joint committee comments to this subsection explain that "the provision authorizing separate verdicts applies only to separate causes of action based upon separate transactions." (Ill. Ann. Stat., ch. 110, par. 68(3), Joint Committee Comments, at 7 (Smith-Hurd 1968).) In light of the statute and comments, it appears clear that separate verdicts were not required in the instant case. Plaintiff's complaint against Coan consisted of two counts—one based upon alleged violation of the Roads and Bridges Act and the other upon common law negligence. Both counts arose from a single transaction—the accident resulting in injury to plaintiff, for which a single recovery of damages was sought. Since the two counts were not based on "different demands upon which separate recoveries might be

had" or "separate causes of action based upon separate transactions," the provisions of section 68(3) of the Civil Practice Act were inapplicable and separate verdicts were not required.

Coan, in its brief, places particular emphasis on *Madison v. Wigal* (1958), 18 Ill. App. 2d 564, 153 N.E.2d 90, where the plaintiff in a personal injury action sued for compensatory damages under a negligence count and punitive damages under a wilful and wanton count. Plaintiff's motion for separate verdicts on the two counts was denied, and the jury found for plaintiff in its general verdict. Because it was impossible to determine what amount was for punitive damages, the case was remanded for a new trial on appeal with the court stating:

> "[W]e think it better practice on motion of a party, under [section 68(3) of the Civil Practice Act], that a separate verdict be returned for actual damages and a separate verdict for punitive damages in order to avoid confusion * * *." (18 Ill. App. 2d 564, 577, 153 N.E.2d 90, 97.)

We do not feel, however, that *Madison* should lead us to the same conclusion here. Remand was required there because the amounts awarded for each element of damage could not be determined, and it was particularly important because punitive damages were recoverable only if actual damages were shown. However, no such interdependence exists between the counts in the instant case. Punitive damages were not asked for; the plaintiff sought only a single award of compensatory damages. Moreover, *Madison* has been held to apply only when prejudice would result if separate verdicts are denied. (*Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423.) Here, Coan has not shown that prejudice resulted from the use of a general verdict form.

Coan also cites *Smithers v. Henriquez* (1938), 368 Ill. 588, 15 N.E.2d 499, to support its argument. *Smithers*, however, dealt with the same problem as did *Madison*, which we distinguished from the instant case. Furthermore, *Smithers* interpreted the 1937 version of section 68(3), which omitted the phrase, "upon which separate recoveries might be had." (1937 Ill. Laws 991, §68(2).) Thus, *Smithers* is not particularly persuasive in interpreting the current provision.

Finally, Coan attaches considerable significance to *Crum v. Gulf Oil Corp.* (1973), 12 Ill. App. 3d 988, 299 N.E.2d 820. There, it was held that special verdict forms should have been used where a third-party complaint contained two indemnification theories—contract and active/passive negligence. We do not think *Crum* is controlling here, as the complaint there was based upon two distinct theories—one resting on the existence and terms of a contract and the other upon the relative negligence of the parties. Thus, while there was only one transaction in *Crum* (an accident), defendant's *action* for indemnity was based upon

two entirely different sets of facts which, under section 68(3) of the Civil Practice Act, required the use of separate verdicts. In the instant case, however, plaintiff's claims are based on the same transaction with the alleged violations of the Roads and Bridges Act identical to the allegations of common law negligence. In view thereof, we conclude that section 68(3) did not require separate verdict forms.

## IV.

We turn now to the contention of Coan that the judgment against it was "contrary to the manifest weight of the evidence in that there was no evidence presented of Coan's negligence." We disagree.

Citing no cases in support of this position, Coan argues that its driver did not knock down the cable on either occasion; that he did not help string the cable over the highway; that he had no part in the decision to raise the cable after it had been knocked down the first time; that he was not responsible for directing traffic under the cable after it had been strung over the trucks; that the use of its truck "was the purely fortuitous event" resulting from its driver having been told by Anderson where and how to position the truck; and that the driver made all the proper technical maneuvers to assure that the raised bed would not slip.

We note, however, the testimony of Coan's driver that he decided how high the bed should be raised; that he thought he had raised the bed to the same height as the truck on the other side of the road; that the operation of the truck was solely within his control; that he knew the cable was resting on soft asphalt, held in place only by a wooden horse; and that he left his vehicle during the one-half hour period before the cable was struck the second time. Further, it appears that Coan's driver knew or should have known that his truck bed was lower than the truck on the other side of the road and that the cable would necessarily be lower as it hung over his truck.

A reviewing court will not set aside a verdict as being against the weight of the evidence where sufficient or substantial evidence supports it (*Bebb v. Yellow Cab Co.* (1970), 120 Ill. App. 2d 454, 257 N.E.2d 164) unless it is against the manifest weight of the evidence (*George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1975), 32 Ill. App. 3d 249, 336 N.E.2d 185) or so manifestly against the weight of the evidence that all reasonably intelligent minds would reach a different conclusion (*Jenkins v. Chicago & Eastern Illinois R.R. Co.* (1972), 5 Ill. App. 3d 954, 284 N.E.2d 392; see also 2 Ill. L. & Pr. *Appeal & Error* §779 (1953)).

As stated in *Rowlett v. Hamann* (1969), 112 Ill. App. 2d 121, 251 N.E.2d 358, "[I]t is well settled in this State that a court of review will not set aside a verdict on the ground that it is contrary to the manifest weight of the evidence unless it is indisputable that the jury reached the wrong

conclusion" (112 Ill. App. 2d 121, 126, 251 N.E.2d 358, 360) or unless it is obvious or clearly evident that the jurors have arrived at an incorrect result (*Cochran v. Parker* (1968), 91 Ill. App. 2d 56, 233 N.E.2d 443).

■■ On the facts appearing in this record, we cannot say that it was indisputable that the jury reached the wrong conclusion in a finding that Coan was negligent.

For the reasons stated, the judgment in favor of plaintiff and against Coan will be affirmed.

## COAN'S CONTENTION IN 77-931
### VI.

In consolidated appeal 77-931, Coan seeks reversal of the order dismissing its separate indemnity action against Anderson which was filed after the verdict was entered against it in the primary case (hereafter "the Richard case"). Anderson's motion to dismiss pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48) was granted, and Coan asserts (with Anderson not denying) that the trial court based its decision solely upon the indemnity complaint and a special interrogatory submitted to the jury in the Richard case.

Coan has advanced two alternate arguments in favor of reversing the order below—one in the event the Richard case is reversed and the other in the event it is affirmed. Since we are affirming the verdict against Coan in that case, we need only consider Coan's second argument—that the trial court erred in granting the motion to dismiss.

■■ We must first resolve the question of whether Coan's complaint even states a cause of action for indemnity. In this regard, Anderson argues that the complaint merely alleges that Coan's driver was a loaned servant at the time of the accident, a status which would act as a complete defense to liability rather than establish the requisite relationship for indemnification. We believe, however, that Coan's complaint does minimally state a cause of action. Initially, we note that while paragraphs 6 and 7 arguably may be read as alleging a loaned servant relationship, the precise term "loaned servant" does not appear in the complaint and other paragraphs do contain allegations which could properly serve as a basis for indemnification. For example, Coan alleges that the driver was under the control of Anderson and that Anderson's negligence was therefore active, and any negligence of Coan was passive. It has been recognized that, in situations wherein one party controls or instructs another party and an accident results, the controlling party may be held actively negligent and the obeying party passively negligent. This obtains even though the obeying party actually committed the act which caused the injury. This was precisely the case in *United States v. Illinois* (7th Cir. 1971), 454 F.2d 297, *cert. denied* (1972), 406 U.S. 918, 32 L. Ed. 2d 117, 92

S. Ct. 1767. There, a Green Beret unit was preparing to demonstrate at the Illinois State Fair techniques of traversing an open space by rope. A state fair supervisor directed the troop to tie one end of the rope to an angle iron attached to a catwalk structure. The supervisor thought the angle iron was welded to metal; but, in fact, it was only screwed to a wooden portion of the catwalk. When the troop tightened the rope, the angle iron broke loose injuring plaintiffs standing below. Judgment was entered against both the State of Illinois and the United States, and the United States successfully obtained indemnity from Illinois. The court of appeals, applying Illinois law, affirmed the indemnity award and held that Illinois, in directing the Green Beret unit, was actively negligent and primarily responsible for the accident. 454 F.2d 297, 301-02.

■■ Similarly, in *American Telephone & Telegraph Co. v. Leveque* (1961), 30 Ill. App. 2d 120, 173 N.E.2d 737, a landowner engaged a contractor to dig a trench on her property for the purpose of laying a drain tile. She had previously granted an easement to the telephone company for an underground cable; yet, she authorized the contractor to dig in an area where the cable was buried. The contractor's equipment struck and damaged the cable, and the telephone company brought suit against the contractor, who in turn impleaded the landowner for indemnification. The trial court dismissed the third-party claim; but this court reversed, holding that the situation presented a proper basis for indemnification. Although the particular facts in the above cases may differ from those in the instant case, the relationship between the two alleged tortfeasors is essentially the same—one party allegedly acting under the direction or control of another party charged with superior knowledge. In view thereof, we think that the allegations of Coan's complaint sufficiently stated an action for indemnity based on an active-passive theory.

■■ In addition, we note that the complaint alleged that at the time of the accident its truck was leased to Anderson. This also could serve as a basis for indemnification. It has been held that a lessor of an instrumentality which is involved in an accident may be entitled to indemnification from the lessee if the accident resulted from using the instrumentality in a manner which violated the lease agreement. For example, in *Blaszak v. Union Tank Car Co.* (1962), 37 Ill. App. 2d 12, 184 N.E.2d 808, an oil company employee was injured when the lid blew off of an improperly maintained railroad tank car leased from the tank car company. The employee brought suit against the tank car company, which in turn impleaded the lessee oil company for indemnification. The third-party complaint was dismissed at trial; but the appellate court reversed, holding that even though there was no express indemnity agreement between the parties, an implied agreement could be inferred if the lessee failed to maintain the car in accordance with the terms of the lease.

Likewise, in the case at bar, Coan may be entitled to indemnification if it could establish that Anderson's alleged participation in suspending the cable over the Coan truck violated its oral lease agreement with Coan. We recognize that the original indemnity complaint did not clearly specify entitlement to recovery under this theory. However, Coan's amended complaint is more explicit, and it is clear that "a cause of action should not be dismissed on the pleadings unless it appears that no set of facts can be proved which will entitle the pleader to relief, and then *only if it is apparent that even after amendment, if leave to amend is sought, no cause of action can be stated.*" (Emphasis added.) *Dinn Oil Co. v. Hanover Insurance Co.* (1967), 87 Ill. App. 2d 206, 211-12, 230 N.E.2d 702, 705.

We see no merit in the contention of Anderson that the holding in *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 316 N.E.2d 516, requires us to affirm the trial court's dismissal. In *Burke*, plaintiff's decedent was killed when he fell from a scaffold while employed as a tuckpointer for the Chicago Housing Authority (CHA). Plaintiff sued Sky Climber, the manufacturer and seller of the scaffold, which brought a third-party indemnity action against CHA alleging the latter had failed to properly maintain and inspect the scaffold in accordance with manufacturer's instructions and warnings and otherwise misused the scaffold in such a manner as to cause it to be a "new and defective scaffold." Sky Climber alleged that its negligence was merely passive and that of CHA was active. The supreme court affirmed a dismissal of the third-party complaint, holding that it did not establish the requisite relationship which would permit indemnification, explaining that "had Sky Climber's position been sustained by the evidence, it would have presented a successful defense in the Burke action and no indemnity action would have been necessary." (57 Ill. 2d 542, 546, 316 N.E.2d 516, 519.) Thus, it appears that the complaint in *Burke* alleged only facts which, if true, would constitute a complete defense. It was clear that there was no ground for indemnification stated and that amending the complaint would not cure the defect. To the contrary, the complaint in the instant case alleges facts which, as indicated above, could form the basis for indemnification. In view thereof, we do not believe that *Burke* requires us to affirm the order dismissing Coan's complaint.

We are buttressed in this belief by *Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 229 N.E.2d 769, where the court, in reversing the trial court's dismissal of a third-party indemnity complaint, stated:

"Of course, a third-party complaint may be dismissed if it fails to state a cause of action. But motions to dismiss such complaints before evidence is heard must be examined with circumspection. Pleadings do not always reveal with certainty the relative degrees

of negligence of either the third-party plaintiff or defendant. * * * In many of these cases it is only after evidence has been heard that a court can decide with reasonable accuracy whether a third-party complaint should be dismissed * * *." (86 Ill. App. 2d 187, 200, 229 N.E.2d 769, 775.)

Similarly, in *Blaszak v. Union Tank Car Co.*, the court said:

"It does not have to appear with certainty that there will be a recovery over against the third party defendant. It is sufficient that the pleadings show a possibility of recovery." 37 Ill. App. 2d 12, 16, 184 N.E.2d 808, 810.

■■ ■ Although the briefs in the case at bar devote considerable attention to the above-discussed matter of the sufficiency of Coan's complaint, the argument in the court below apparently centered around the question of whether Coan had been proven actively negligent in the Richard case and therefore barred from indemnity from Anderson. The law regarding the relationship between a primary case and a subsequent indemnity action was clearly stated in *Preston v. National Broadcasting Co.* (1971), 133 Ill. App. 2d 200, 203, 272 N.E.2d 700, 702:

"[A]n indemnitee, in his action to recover from the indemnitor the amounts paid in satisfaction of a judgment obtained against him by an injured person, is bound by all findings without which the judgment could not have been entered, and * * * if the judgment in the earlier action rested on a fact fatal to recovery in the action over against the indemnitor, the latter action cannot be successfully maintained."

The trial court here held as a matter of law that Coan was found to have been actively negligent in the Richard case—a fact fatal to recovery in the case at bar. Most significantly, Coan contends, and Anderson does not deny, that the court made this determination solely on the basis of an affirmative answer to a special interrogatory submitted to the jury in the Richard case, as follows:

"Did the conduct of the defendant, John M. Coan, immediately before and at the time of the occurrence complained of constitute negligence which proximately caused the alleged injury and damages complained of?"

We do not see how the trial judge could have concluded that the affirmative answer to the special interrogatory was a finding that Coan was actively negligent. The interrogatory merely asked whether Coan was negligent. It did not inquire whether the negligence was active or passive, and no assumption may be made solely on the affirmative answer that Coan was actively negligent. Categorizing negligence as active or passive involves making a "qualitative distinction between the negligence of two tortfeasors." (*Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d

445, 449, 322 N.E.2d 58, 60; *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 603, 208 N.E.2d 573, 574; 21 Ill. L. & Prac. *Indemnity* §33 (1958).) One who is actively negligent has been called the "more culpable party." (*Lindsey v. Dean Evans Co.* (1973), 11 Ill. App. 3d 432, 436, 297 N.E.2d 8, 11.) Obviously, this characterization requires a comparison of the conduct of two parties which is not accomplished by a special finding that a party was negligent. Moreover, it appears that the Richard record was not available for use by the trial court in its determination that Coan was actively negligent.

Anderson, in its brief, also argues that the negligence of Coan's driver in failing to raise the truck to a sufficient height was necessarily active because he was an active participant in the incident. In reviewing the record in the indemnity action, however, it does not appear that the trial judge was even aware of the precise nature of the driver's conduct when he made his ruling. Regardless, we reject the argument that active participation necessarily means active negligence, since it is settled that action or movement, under some circumstances, could be passive negligence. *Parr v. Great Lakes Express Co.* (7th Cir. 1973), 484 F.2d 767; *Moody v. Chicago Transit Authority* (1974), 17 Ill. App. 3d 113, 307 N.E.2d 789; *Trzos v. Berman Leasing Co.* (1967), 86 Ill. App. 2d 176, 229 N.E.2d 787; *Pennsylvania Co. v. Roberts & Schaefer Co.* (1928), 250 Ill. App. 330.

## BELL'S CONTENTIONS IN 76-777
## VII.

We turn now to the first contention of Bell, that the trial court erred in refusing to grant its motion for a directed verdict in its favor. In substance it argues that if its employee (Boldt) committed the negligent acts charged, he was acting beyond the scope of his employment as a matter of law and, therefore, that Bell cannot be held liable under the doctrine of respondeat superior.

■■ It is well settled that the doctrine of respondeat superior is applicable only when the employee is acting within the scope of his employment (*Palmer v. Miller* (1942), 380 Ill. 256, 43 N.E.2d 973; *Insurance Co. of North America v. Hewitt-Robbins, Inc.* (1973), 13 Ill. App. 3d 534, 301 N.E.2d 78; *Smith v. 601 Liquors, Inc.* (1968), 101 Ill. App. 2d 306, 243 N.E.2d 367; *Brill v. Davajon* (1964), 51 Ill. App. 2d 445, 201 N.E.2d 253), and the employee must be acting within the scope of his employment with respect to the transaction or occurrence which gave rise to the injury. *Metzler v. Layton* (1939), 373 Ill. 88, 25 N.E.2d 60; *Hogan v. City of Chicago* (1943), 319 Ill. App. 531, 49 N.E.2d 861; *Creek v. Naylor* (1941), 309 Ill. App. 601, 33 N.E.2d 740.

It is clear that an employee may be regarded as acting within the

scope of his employment even though his conduct at the time of the accident was not authorized by his employer. For example, in *Darner v. Colby* (1941), 375 Ill. 558, 31 N.E.2d 950, Colby, an employee of the defendant oil refinery company, was hired as a local manager of a bulk station. One day he drove a truck to one of the company's compounding plants in order to pick up some greases, oil, and alcohol that he had ordered for use at the station he managed. He secured these supplies without the knowledge of his employer, and he was not authorized to do so in his employment contract. On the return trip, after picking up the supplies, he was involved in an accident. The court held that the employee was nonetheless acting within the scope of his employment, stating:

> "Whether the company knew of Colby's trip to Chicago Heights [the location of the compounding plant] on the day of the accident, or whether it specifically directed him to go there on that day, is not material in an action such as this, brought by a third party for injury on account of negligence. The rule is: 'A master is liable to third persons injured by the negligent acts done by a servant in the course of the employment, although the master did not authorize or know of the servant's act of negligence or even if he disapproved or forbade it.' [Citation.] In *Standard Oil Co. v. Parkinson*, 152 Fed. 681, the rule is stated: 'A master is liable for damages caused by the negligence of his agent or servant within the scope and in the course of his employment, although he neither directs nor is aware of his acts.' In the early case of *Keedy v. Howe*, 72 Ill. 133, this court stated: 'Text writers on agency, Story among others, say, in a civil case, where an agent does an act in the course of his employment, although the principal did not authorize or participate in, or know of such misconduct, or even if he forbade the acts or disapproved of them, the rule of *respondeat superior* applies. Story on Agency, sec. 452.' The issue in such a case is whether the act done is in the scope of the employment * * *." 375 Ill. 558, 566-67, 31 N.E.2d 950, 954.

As explained in *Bonnem v. Harrison* (1958), 17 Ill. App. 2d 292, 150 N.E.2d 383:

> " 'Whether the extent of his departure from the scope of his employment, or the area of his service, was so unreasonable as to make of his act of deviation an independent journey of his own, rather than a mere detour or one incidental to his employment, is a question of degree which depends on the facts of the case and is a matter for determination of the jury, unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete

departure from the business of the master. When the deviation and its purpose are not in dispute, and it appears beyond reasonable controversy that the purpose had no connection with the duties of the servant, there is no liability, and it is the duty of the court to dismiss the action or direct a verdict * * *. On the other hand, in cases where the deviation is slight and not unusual, the court may, and often will, as a matter of law, determine that the servant was still executing his master's business. *Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.'* " (17 Ill. App. 2d at 298-99, 150 N.E.2d at 386 (quoting 35 Am. Jur. *Master and Servant* §556 (1941).)

See also *Sauer v. Iskowich* (1967), 80 Ill. App. 2d 202, 224 N.E.2d 21, where a jury's finding that an employee was acting in the scope of his employment was reversed, with the court stating:

"The mere fact that the employee is not, at the instant of the accident, immediately and sole-mindedly pursuing his employer's occupation, does not necessarily take him out of the scope of his employment. All questions are to be decided in the light of all the relevant factors as to the nature of the employment, and, preeminently, the purpose and physical and temporal degree of the alleged deviation." (80 Ill. App. 2d 202, 206, 224 N.E.2d 21, 24.)

The *Sauer* court also quoted portions of section 229 of the Restatement (Second) of Agency (1958), which explains factors to be considered in determining scope of employment:

"§229 Kind of conduct within scope of employment.

(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

> (a) whether or not the act is one commonly done by such servants;
>
> (b) the time, place and purpose of the act;
>
> (c) the previous relations between the master and servant;
>
> (d) the extent to which the business of the master is apportioned between different servants;
>
> * * *
>
> (f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done and the act authorized; (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant; (i) the extent of departure from the normal method of accomplishing an authorized result; * * *." Restatement (Second) of Agency §229 (1957).

In determining whether the trial court in the instant case properly denied Bell's motion for a directed verdict in view of the above-stated law, the *Pedrick* standard should apply (*Pedrick v. Peoria & Eastern Ry. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504), which poses the following question: Did the evidence, when viewed in its aspect most favorable to Richard, so overwhelmingly indicate that Boldt was not acting within the scope of his employment that no contrary verdict could ever stand? We think not.

Initially, we note that Bell places great emphasis on the fact that Boldt was not specifically authorized to raise the cable or physically tend to it in any manner. It is asserted that Boldt's only duty was to determine whether a cable was down and, if so, to assess the damage and report to Bell. However, we feel that the fact that Boldt's acts may not have been specifically authorized by Bell is not controlling. The law stated above clearly indicates that unauthorized conduct may fall within the scope of employment. As stated in Restatement (Second) of Agency §230 (1957), "An act, although forbidden, * * * may be within the scope of employment."

There are facts and circumstances from which the jury could properly have concluded that Boldt was acting within the scope of his employment at the time the cable was suspended over the two trucks. Unquestionably, any participation of Boldt in the raising of the cable was motivated by a desire to protect it from further damage. While Anderson also gained from this action by the opening of the road for traffic, it cannot be denied that Boldt was acting in the best interest of Bell. The cable was raised shortly after Boldt made his investigation; little time had passed after Boldt had executed his admitted authorized duties; the incident occurred exactly in the place where Boldt was supposed to be at that time, and it was Boldt's duty to assess the nature and extent of any problem concerning Bell's property. In addition, the instrumentality which caused the injury to plaintiff was the cable, and it appears to us that Bell could reasonably have expected that when Boldt arrived at the scene he would take necessary action to prevent further damage to its property if he were in a position to do so. Further, although Bell denied being involved in the decision to raise the cable, Thorp testified that the decision to do so was "under the supervision of the man from Illinois Bell"; although later, on cross-examination, he stated that he was not sure

whether it was a Bell or Commonwealth Edison employee. Boldt himself testified that he helped lift the cable over the CMI machine and that he aided another worker who had slipped while placing the cable over the truck. Although he testified that he did not help in lifting the cable onto the truck, he was impeached by an answer in his discovery deposition that he did help in so placing it.

■■ Under these circumstances, we feel that there existed more than enough evidence to warrant submission of the question to the jury and that Bell's motion for a directed verdict on this issue was properly denied.

## VIII.

Bell next asserts that it was error for the trial court to instruct the jury on the Roads and Bridges Act with respect to Bell. As shown above, section 6 provides that a cause of action accrues for injury or death against "[a]ny contractor, subcontractor, or his authorized agent or driver of any motor vehicle who knowingly or wilfully violates any provision of this Act, * * *." (Ill. Rev. Stat. 1977, ch. 121, par. 314.6.) Bell asserts that it was not a "contractor, subcontractor, or his authorized agent" as required for liability under the Act. We agree.

The term "contractor" is of obvious definition. It describes a party who enters into a contract with the owner of certain property to perform some type of work thereon. (See, *e.g., Chapman v. Edwards* (1933), 133 Cal. App. 72, 76, 24 P.2d 211, 213; *Executive House Building, Inc. v. Demarest* (La. App. 1971), 248 So.2d 405, 411; *Chase v. Clinton County* (1928), 241 Mich. 478, 484, 217 N.W. 565, 567; *Gaydos v. Packanack Woods Development Co.* (1960), 64 N.J. Super. 395, 400, 166 A.2d 181, 184.) The meaning of the term "subcontractor" is also clear. It describes a party who contracts with the contractor to do part of the work which the contractor has previously agreed to perform. (See, *e.g., Brazie v. Cannon & Wendt Electric Co.* (1965), 1 Ariz. App. 490, 405 P.2d 281, 283; *O'Neal Steel Co. v. Leon C. Miles, Inc.* (Miss. 1966), 187 So.2d 19, 24; *Manhattan Construction Co. v. District Court* (Okla. 1973), 517 P.2d 795, 797; *Johnson v. O'Kay Turkeys, Inc.* (Okla. 1964), 392 P.2d 741, 743.) Bell clearly does not fall within either of these two commonly accepted definitions. It did not contract with Elmhurst or the State for any performance, nor did it contract with Anderson to do any portion of the work which Anderson was required to perform. We see no merit in plaintiff's suggestion that when Bell took part in the raising of the cable, it became a contractor within the meaning of the Act. As the right of action created under the Act was unknown at common law, we will construe the statute strictly and not extend its scope beyond that which its plain meaning indicates. *Summers v. Summers* (1968), 40 Ill. 2d 338, 239 N.E.2d

795; *Cedar Park Cemetery Association, Inc. v. Cooper* (1951), 408 Ill. 79, 96 N.E.2d 482; *Armstrong v. Obucino* (1921), 300 Ill. 140, 133 N.E. 58. ■■ Therefore, we find that Bell was not a contractor within the aim of the Roads and Bridges Act and that the Roads and Bridges Act instruction was improperly submitted as to Bell.

## IX.

Having determined that the count alleging violation of the Roads and Bridges Act was improperly submitted as to Bell, we must now consider whether the general verdict against it can stand on the negligence count alone.

There appear to be only two reported cases which have dealt precisely with the validity of a general verdict when one of the counts thereunder was erroneously submitted.[1] While new trials were ordered in both, the standards set forth in them when applied to the facts in the instant case indicate that the general verdict against Bell should stand.

In *Sims v. Chicago Transit Authority* (1955), 7 Ill. App. 2d 21, 129 N.E.2d 23, the plaintiff was struck by defendant's northbound streetcar shortly after she exited one of its southbound cars. She brought suit against defendant in five counts—four sounding in common law negligence and one alleging that because she and defendant were in a carrier-passenger relationship it owed her the highest degree of care consistent with the practical operation of its business. All five counts were submitted to the jury, which returned a general verdict against defendant. On appeal, the court in holding that the carrier-passenger relationship had ceased at the time of the accident and that therefore the submission of the fifth count to the jury was error, stated the applicable law as follows:

> "There is a presumption that a general verdict under several counts or issues, some of which are good and some bad or unsupported by any evidence, is based on the evidence supporting the good counts or issues. [Citations.]
> * * *
> In determining whether to invoke the presumption, the reviewing court should consider whether the evidence is close on the facts or sharply conflicting, and whether the error of submitting the unsupported issues to the jury was such as could reasonably have affected its verdict. Where the error charged has to do with the character of the proof required, there is a strong tendency toward reversal. * * * The rule * * * is that unless the reviewing

---

[1] With the exception of *Huckabee v. Bell & Howell, Inc.* which will be discussed later, none of the cases cited by Bell or Richard are in point.

court can say that on retrial the result could not be otherwise, the cause must be remanded toward the end that the party bringing error may secure substantial justice. Where the reviewing court can see the case has been fairly tried, and that the judgment is clearly right upon the facts, and that consequently another trial must necessarily result the same way, it will not reverse on the ground that an erroneous issue has been submitted to the jury. Quite a different rule prevails where the case is a close one on the facts. In such a case where the evidence is about evenly balanced, the reviewing court will reverse for any substantial error in the trial court on a material question that may have turned the scale in favor of the successful party." (7 Ill. App. 2d 21, 28-29, 129 N.E.2d 23, 26-27.)

The *Sims* court felt that the jury could possibly have applied the higher (passenger-carrier) standard of care in reaching its verdict, so the case was remanded for a new trial.

In *Huckabee v. Bell & Howell, Inc.* (1969), 102 Ill. App. 2d 429, 243 N.E.2d 317, *aff'd* (1970), 47 Ill. 2d 153, 265 N.E.2d 134, the plaintiff was injured when a scaffold on which he was working collapsed. He sued, among others, the lessor of the component parts of the scaffold under the Structural Work Act and also under common law negligence. While defendant lessor clearly was not "in charge of" any work, the trial court erroneously held that a defendant did not have to be proven to be in charge of work in order to be liable under the Act, and it submitted the statutory and common law counts to the jury, which returned a general verdict against the lessor. On appeal, the *Huckabee* court relied upon *Sims v. Chicago Transit Authority* in finding that:

"The submission of the Scaffold Act count to the jury was substantial error. The proof required for that count is of a different degree and nature than the proof required for common-law negligence; for example, contributory negligence is not a defense under the Scaffold Act. [Citation.] We cannot say with any degree of certainty that, upon the evidence presented, the jury would return a verdict based upon common-law negligence. Thus we must reverse the judgment and remand the cause for a new trial on the issue of common-law negligence." 102 Ill. App. 2d 429, 442, 243 N.E.2d 317, 324.

It does not appear, however, that the law as set forth in *Sims* and *Huckabee* requires a remandment here. Initially, it is noted that in those cases the courts were particularly concerned with the fact that the separate counts required different standards of proof. While it is true that contributory negligence is a defense to a common law negligence count and that it may not be a defense to a claim under the Roads and Bridges

Act, in the instant case we do not see it to be an issue as the record discloses no evidence of contributory negligence on the part of plaintiff. Thus, it does not appear that there existed any significant disparity between the standards of proof required under the two counts.

■■ Moreover, the allegations against Bell under the Roads and Bridges Act count were nearly identical to those under the common law negligence count. Any conduct found to violate the provisions of the Roads and Bridges Act allegations would also support a finding of the issues in favor of plaintiff on the common law negligence count. Thus, applying the reasoning of *Huckabee*, it appears that no harm could have resulted from the erroneous submission of the statutory count to the jury, and we are of the belief that this error did not "turn the scale in favor of" plaintiff. Accordingly, the verdict against Bell is upheld.

## X.

Bell also maintains that the trial court erroneously directed a verdict against it on its third-party claim for indemnification against Robert R. Anderson Co. It premises this contention on the theory that Anderson was actively negligent while Bell was passively negligent. We agree that a verdict should not have been directed.

■■ It is well settled that a party who is passively negligent has the right to be indemnified from a party who is actively negligent. (*Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58; *Carver v. Grossman* (1973), 55 Ill. 2d 507, 305 N.E.2d 161; *Chapel v. Thompson* (1977), 56 Ill. App. 3d 548, 372 N.E.2d 95.) However, a party who is actively negligent has no right to indemnification regardless of whether the negligence of the proposed indemnitor is active or passive. (*Chapel v. Thompson*; *National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 355 N.E.2d 43; *Burke v. Sky Climber, Inc.* (1973), 13 Ill. App. 3d 498, 301 N.E.2d 41, *aff'd* (1974), 57 Ill. 2d 542, 316 N.E.2d 516.) As we have indicated above, there are no clear-cut guidelines as to what constitutes active or passive negligence. Usually, a party is considered actively negligent "if he participates in some manner in the conduct or omission which caused the injury." (*Sargent v. Interstate Bakeries, Inc.* (1967), 86 Ill. App. 2d 187, 193, 229 N.E.2d 769, 772.) However, a party who is totally immobile may be regarded as actively negligent. (*Moody v. Chicago Transit Authority* (1974), 17 Ill. App. 3d 113, 307 N.E.2d 789.) Generally, one is viewed as only passively negligent if he breaches a duty of care imposed upon him but does not actively participate in some act or omission. *Carver v. Grossman*; *Chapel v. Thompson*; *Sargent v. Interstate Bakeries, Inc.* See Bua, *Third Party Practice in Illinois: Express and Implied Indemnity*, 25 DePaul L. Rev. 287 (1976).

■■ The arguments presented by the parties in the instant case have

centered around the question of whether or not Bell was actively negligent. It appears from the record that there was conflicting testimony as to whether Boldt (the Bell employee) took part in or was even present at the time the decision was made to lift the cable. Also, there were differing accounts as to the degree that Boldt participated in the lifting of the cable. In view of the *Pedrick* standard, we cannot say as a matter of law that Boldt was actively negligent, as we believe that reasonable people could draw different inferences from the facts. For us to hold otherwise would require a weighing of the evidence, which a court of review may not do. (*Moran v. St. Paul Federal Savings & Loan Association* (1967), 83 Ill. App. 2d 478, 228 N.E.2d 97.) Accordingly, we hold that the active-passive issue was improperly taken from the jury in Bell's third-party action against Anderson.

Plaintiff filed a separate notice of appeal from the verdicts and judgments in appeal No. 76-777 against him and in favor of defendants, Pena and Schiefelbein. In his brief, however, he asks only "that in the event that there is a new trial as to either Defendant Illinois Bell or Defendant Coan, Inc., a new trial should also involve Defendants Pena and Schiefelbein." Because we have not ordered a new trial as to Illinois Bell or Coan, we will reject plaintiff's conditional request for a new trial against Pena and Schiefelbein. An additional reason to do so appears in the fact that plaintiff does not allege any error committed as to Pena or Schiefelbein nor does he contend that the verdict entered in their favor was contrary to the manifest weight of the evidence. His only argument is that because a jury could reach a different verdict on retrial, justice requires that the case be retried as to Pena and Schiefelbein. This argument is without merit. "[J]ury determinations can be set aside only when a court of review * * * is clearly satisfied that they were occasioned by passion or prejudice or found to be wholly unwarranted from the manifest weight of the evidence." (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623, 126 N.E.2d 836, 841.) "A verdict will not be set aside merely because the jury could have found differently * * *." 5 Ill. 2d 614, 623, 126 N.E.2d 836, 841.

We also feel that the cases cited by plaintiff in support of his argument are not persuasive. In both cases, *Blake v. Mahaffey* (1976), 39 Ill. App. 3d 724, 350 N.E.2d 883, and *Roberts v. Hyland Builders Corp.* (1962), 34 Ill. App. 2d 276, 181 N.E.2d 197, the trial court ordered new trials because of errors that had been committed which might have misled or improperly influenced the jury. Here, plaintiff has pointed out no such error nor has he given any other reason to support a request for a new trial. Accordingly, we hold that a new trial as to defendants Pena and Schiefelbein is not warranted.

For the reasons stated, the judgment in appeal 76-777 in favor of

plaintiff and against Illinois Bell Telephone Company and John M. Coan, Inc., is affirmed. The judgment in appeal 76-777 directing a verdict against Illinois Bell Telephone Company in its third-party claim against Robert R. Anderson Company is reversed, and the cause is remanded for further proceedings on this third-party complaint consistent with the content of this opinion. The order in appeal 77-931 granting the motion of Robert R. Anderson and Company to dismiss the indemnity action of John M. Coan, Inc. is reversed and remanded for further proceedings consistent with this opinion. Concerning plaintiff's cross-appeal, we affirm the judgments in favor of defendants Pena and Schiefelbein and against plaintiff.

Affirmed in part.

Reversed in part and remanded.

MEJDA and WILSON, JJ., concur.